IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRYAN JOYCE,** Individually and for others similarly situated, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:22cv1367 |
| | ) | **Electronic Filing** |
| **COLTER ENERGY SERVICES USA, INC.,** | ) ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff commenced this class action on behalf of himself and all others similarly situated seeking redress under the Pennsylvania Minimum Wage Act, 43 P.S. § 333.101 *et seq.*, and Pennsylvania's Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.*  Currently before the court is plaintiff's motion to compel defendant to provide supplemental discovery responses that pertain to all putative class members.  Although a class has not been certified, plaintiff requested discovery materials relating to all "class members."  Defendant objected on the basis that no class has been certified and thus such discovery is premature.  The parties have been unable to overcome their impasse, and the court is called upon to determine the appropriate scope of discovery at this juncture.

Defendant is correct in its assertion that a class has not been certified.  Indeed, the court has not reached the class certification stage of the litigation.  But this is not because plaintiff has inappropriately expanded the scope of discovery; instead, it is because, in the court's view, the discovery needed to adjudicate the class certification inquiry appropriately has not yet been completed.

To begin, defendant limited its discovery responses to a group of 30 employees that shared the same job assignments as plaintiff, that is those who held the position of a field supervisor.  In doing so defendant produced responses covering similar day and night supervisors that included pay records, time record summaries and worker activity logs.  It deems this limited response to be adequate.  Plaintiff disagrees.

Defendant's production of documents and information limited to field supervisors is deficient.  Defendant does not have the unilateral prerogative to determine the scope of discovery.  See Sentis Grp., Inc. v. Shell Oil Co., 763 F.3d 919, 926 (8th Cir. 2014) (the parties do not possess the unilateral ability to dictate the scope of discovery based on their own theories of the case); Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc., No. CV 19-513, 2023 WL 4139375, at *4 (E.D. Pa. June 22, 2023) (same).  Instead, it is well established that the scope and conduct of discovery are proper matters committed to the sound discretion of the trial court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987) (citing Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983)).  And in this regard Rule 26 of the Federal Rules of Civil Procedure permits discovery on "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).

Here, this court has not entered an order limiting the class, nor has the court limited the class to specific positions, such as field supervisors.  There is good reason for this: the allegations forming plaintiff's Pennsylvania Minimum Wage Act claim are not limited to or otherwise cabined by plaintiff's position as a "field supervisor."  To the contrary, through this lawsuit plaintiff seeks to represent "[a]ll current and former Hourly-Paid employees of Colter Energy employed in or based out of, the Commonwealth of Pennsylvania during the three years preceding August 30, 2022 (the "Class Members")."  First Amended Complaint (Docket No. 28)

at ¶ 11.  Defendant accurately notes that plaintiff's complaint avers that he was a "Field Supervisor" and that it employs other Field Supervisors, but the referenced averments highlight defendant's employment of "other hourly workers" and thus the inquiry as to hourly employees is not limited to only those employed in distinct roles.  Id. at ¶¶ 15-16.

Moreover, the allegations forming the substance of plaintiff's wage and hour violations are not limited to distinct activities performed by field supervisors.  To the contrary, they include activities that can be performed by other hourly employees without regard to job classifications, such as driving and transporting other employees from hotels to their job sites; driving to and from the worker's job site; work performed while waiting for a digital ticket; work performed after a predetermined end of the workday; work performed during lunch break; work performed while conducting safety checklists/regulatory requirements before the predetermined start of the workday; and attending and participating in defendant's mandatory and online training courses. Id. at ¶ 20(a)-(g).  Thus, the gravamen of the complaint is not the misclassification of field supervisors as exempt; it is the work activities assertedly performed by hourly employees at the insistence of defendant but then treated as non-compensable, off-the-clock activities.

At this juncture, each of the non-compensable, off-the-clock activities performed by plaintiff and the performance of any of those activities by any other hourly employee supplies the relevancy for the initial round of discovery, with leeway for expansion in follow-up discovery.  In other words, defendant's unilateral decision to limit its responses to documents and/or information to only the information pertaining to plaintiff and/or the activities only performed by other field supervisors (and similar self-imposed limitations) will not be countenanced.   By limiting discovery responses in this fashion, defendant is proceeding as if it possesses the authority to determine class certification.  It does not have that prerogative.

Consequently, defendant's efforts to impose such limitations into the scope of discovery will be overruled and defendant will be required to comply with the discovery requests accordingly.

This is not to say that defendant will be unable to defend against and/or is otherwise unable to limit the scope of discovery and/or the size of the class.  Indeed, plaintiff notes that defendant did pay "other ranks of employees (such as assistants) for their time spent driving to and from work and while attending training courses."  Id. at ¶ 21.  So certain groups of hourly workers may not have performed the activities in question or uniformly may have been paid for such activities.  But establishing any such limitation to discovery and/or the proposed class/ appropriate subgroups within the proposed class must be done through the information produced in discovery, such as through the production of payroll data and defendant's payroll practices.

Similarly, plaintiff is not categorically opposed to exploring the use of "representative sampling" to ease any established burden that defendant may face.  See Plaintiff's Reply Brief (Doc. No. 71) at 4.  Accordingly, the court does not foreclose defendant's ability to establish sufficient protocols (with the assistance of plaintiff's counsel) that will permit the production of statistical sampling that the parties and the court can treat as a reliable, representative sampling of the hourly workers and/or any subgroup of those workers.

Defendant also objected to thirty-one (31) discovery requests on the ground that such requests were "unduly burdensome."  However, in most of these responses, defendant does not explain how the request imposes an undue burden.  Additionally, defendant asserted that producing documents which it is legally required to maintain also is unduly burdensome.  Defendant's objections on these grounds will be overruled.

Courts have generally look disapprovingly on responses stating that an inquiry is "overly broad," "unduly burdensome," "vague," "ambiguous," "oppressive" or "irrelevant" unless the party adequately has explained its reasoning for that designation.  Velocity Int'l, Inc. v. Celerity

_Healthcare Sols., Inc._, No. Civ. A. 09-102, 2010 WL 2196423, at *2 (W.D. Pa. June 1, 2010) (citing _Josephs v. Harris Corp._, 677 F.2d 985, 992 (3d Cir., 1982); Fed. R. Civ. P. 33(b)(4)). Instead of blanket statements, the party resisting discovery must show specifically how each interrogatory is not relevant or how each inquiry is overly burdensome. _Redland Soccer Club, Inc. v. Dep't of Army of U.S._, 55 F.3d 827, 856 (3d Cir. 1995) (citing _Josephs v. Harris Corp._, 677 F.2d 985, 992 (3d Cir. 1982)).

Defendant's objections based on burdensomeness do not meet the legal standard; nor are they persuasive. The mere statement that a response is unduly burdensome is not adequate. The court also has difficulty understanding how producing documents that defendant legally is required to maintain under Department of Labor regulation can be unduly burdensome. On numerous occasions, courts have discussed federal regulations requiring employers to maintain and preserve documentation and rejected the notion that producing such documents in a wage and hour case is burdensome. _See, e.g., United States Dep't of Lab. v. Fed. Armament, LLC_, No. 2:21-CV-2045, 2022 WL 2317275, at *3 (W.D. Ark. June 28, 2022) (granting plaintiff's motion to compel on grounds that discovery requests were not unduly burdensome because "the Defendants are required by federal law to 'maintain and preserve payroll or other records containing … [h]ours worked each workday and total hours worked each workweek'" under 29 C.F.R. § 516.2(a)); _Sziber v. Dominion Energy, Inc._, No. 3:20-CV-117, 2021 WL 6332784, at *3 N. 2 (E.D. Va. Sept. 14, 2021) (denying defendant's motion to quash and stating that C.F.R. § 516.2(a) requires employers to maintain employment records); _Acosta v. Revolutionary Home Health, Inc._, No. 3:17-CV-1992, 2020 WL 1953594, at *21-22 (M.D. Pa. Apr. 23, 2020) (granting plaintiff's partial motion for summary judgment because defendant did not adhere to federal recordkeeping regulations under 29 C.F.R. § 516.2(a)).

It follows that defendant's burdensome objections are unavailing. Accordingly, it will be ordered to produce the requested payroll documents and employment information.

Another area in dispute is defendant's invocation of privilege. Defendant has stated in response to some interrogatories and requests for production that plaintiff seeks information or documents protected by the attorney-client privilege or the work product doctrine. In response, plaintiff contends that these objections are generic, and the information sought is not privileged, but relevant and discoverable.

Although they both operate to protect information from discovery, the work-product doctrine and the attorney-client privilege serve different purposes. In re Chevron Corp., 633 F.3d 153, 164 (3d Cir. 2011). "The attorney-client privilege protects from disclosure confidential communications made between attorneys and clients for the purpose of obtaining or providing legal assistance to the client." In re Grand Jury, 705 F.3d 133, 151 (3d Cir. 2012). The work-product doctrine "protects from discovery materials prepared or collected by an attorney 'in the course of preparation for possible litigation.'" Id. The party resisting discovery bears the burden of demonstrating the applicability of attorney-client privilege or the work-product privilege as a bar to discovery. McCrink v. Peoples Benefit Life Ins. Co., No. Civ. A. 2:04cv01068 - LDD, 2004 WL 2743420, at *1 (E.D. Pa. Nov. 29, 2004). Further, the Federal Rules require a party who withholds otherwise discoverable information on the grounds of privilege to "describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that . . . will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). Failure to assert a privilege properly may amount to a waiver of that privilege. Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n, 914 F. Supp. 1172, 1178 (E.D. Pa. 1996). Moreover, when a party has asserted such privileges, it must then prepare a privilege log which describes the documents or things being withheld with the required level of

specificity.  See, e.g., Pritchard v. Dow Agro Scis., 263 F.R.D. 277, 293 (W.D. Pa. 2009) ("In conjunction with their objections to the written discovery, Plaintiffs shall also produce to Dow a detailed privilege log listing each document withheld, "expressly make the claim" of privilege or work product protection, including specifying whether such documents constitute factual or opinion work product, and "describe the nature of the documents, communications, or tangible things not produced or disclosed - and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.") (quoting Fed. R. Civ. P. 26(b)(5)).

A review of defendant's responses to the discovery requests where it has invoked the attorney-client privilege or work-product doctrine demonstrates that it has not sufficiently met it obligations to invoke the privileges.  On numerous occasions, defendant objects to plaintiff's requests because the information is protected by the attorney-client, work-product or other privilege.  However, it does not describe the documents or information in a manner that will permit plaintiff and the court to assess the claim.  Simply stating that the documents are privileged information and therefore not discoverable will not suffice.  Further, it does not appear that defendant has provided a sufficiently detailed privilege log for those documents which it declined to produce.

In light of the above, and subject to any further agreement between counsel, defendant will be required to either produce the documents as requested or produce a privilege log with sufficient detail to permit the court and plaintiff's counsel to assess the propriety of any invocation of privilege.

Similarly, defendant must comply with Rule 34(b)(2)(C).  This Rule provides that in lodging an objection to a request for production of documents, the respondent "must state whether any responsive materials are being withheld on the basis of that objection."  To the

extent that defendant has any objection that has not been overruled by the court's current rulings on plaintiff's motion to compel (and/or in any follow-up or additional discovery), defendant must state in its formal responses whether responsive materials are being withheld from production pursuant to the objection.  It likewise must revise its formal responses so indicate as well as indicate whether documents are being withheld in its responses to any additional requests.  While defendant did provide plaintiff's counsel with informal notice as to whether such withholding had occurred, such informal responses lack the binding force of formal responses and are not the process mandated by the Federal Rules of Civil Procedure.  Consequently, this aspect of plaintiff's motion will be granted as well.

Finally, defendant objects to plaintiff's requests seeking to identify all putative class members who worked for or on behalf of defendant during the limitations period.  Specifically, defendant objects to this request because it contends that the names and addresses of class members are not, *per se*, within the scope of legitimate discovery.  It further asserts that courts ordinarily do not permit discovery of class members' identities at the precertification stage.  See Defendant's Response in Opposition (Docket No. 67) at 13.

In support of its assertions, defendant includes various non-binding opinions from other district courts.  Id.  In addition, it quotes one Western District of Pennsylvania case which states: "[c]ourts have reached differing results regarding the extent to which pre-certification discovery of the identity of potential class members is appropriate."  Burkhart-Deal v. Citifinancial, Inc., No. 8-1289, 2009 WL 1750915, at *3 (W.D. Pa. June 19, 2009).  Defendant also highlights the Supreme Court's opinion in Oppenheimer Fund, Inc. v. Sanders to support its contention that it is generally inappropriate to order the production of the names and addresses of all potential class members.  Defendant's Response in Opposition at 14 (stating "[i]nterestingly, Oppenheimer Fund actually held that discovery into class members' identities would typically be

inappropriate.  437 U.S. at 354 ('In short, we do not think that the discovery rules are the right tool for this job.').").

Here, defendant's reliance on the quoted language in Oppenheimer is misplaced. According to the Supreme Court, the critical distinction in whether parties can obtain information identifying class members is whether "the information is sought to facilitate the sending of notice rather than to define or clarify issues in the case." Oppenheimer Fund, 437 U.S. at 350.  The Court reiterated this notion in note 20 where it further observed: "[t]here is a distinction in principle between requests for identification of class members that are made to enable a party to send notice and requests that are made for true discovery purposes." Oppenheimer, 437 U.S. at 354 n. 20.  In Oppenheimer, the plaintiff "argued to the District Court that they desired this information to enable them to send the class notice, and not for any other purpose." Id. at 353.  Examined in this context, the Court held that Rule 23, which deals exclusively with class actions, was "the natural place to look for authority for orders regulating the sending of notice."  Id. at 354.  Thus, the Court did not think the discovery rules were the "right tool for [the] job"; that is, for obtaining information **specifically for the purpose of sending the class notice**.  Id.

In contrast, the Court made the very point that there are instances where class members names and addresses can be obtained during discovery.  See Oppenheimer, 437 U.S. at 354 n. 20 (noting "[w]e do not hold that class members' names and addresses never can be obtained under the discovery rules.  There may be instances where this information could be relevant to issues that arise under Rule 23.")  Such instances can include numerosity, typicality, common questions of law or fact, and adequacy of representation, or "where a party has reason to believe that communication with some members of the class could yield information bearing on these or other issues."  Id.

This action is distinguishable from Oppenheimer's explicit ruling on obtaining the information for notice purposes only and is one of those instances where the information is relevant to the central issues under Rule 23.  And unlike the respondents in Oppenheimer, plaintiff is seeking the identity of class members to help establish "numerosity, commonality, and typicality in this putative class action."  Plaintiff's Motion to Compel (Docket No. 60) at 7.

Furthermore, while Burkhart-Deal did observe that courts have reached differing conclusions about this issue, Burkhart-Deal went on to hold that the plaintiff was entitled to the identities of other class members.  2009 WL 1750915, at *3 (W.D. Pa. June 19, 2009) (Ambrose, J., then-Chief Judge).  Indeed, as noted by plaintiff, Judge Ambrose adhered to the guiding principles underlying the Federal Rules of Civil Procedure and found that such information "will reasonably assist Plaintiff's attempt to meet the requirements of Rule 23 certification."  Id.  She opined: "[t]here is no question that the identity of [putative class members] in Pennsylvania is reasonably calculated to lead to the discovery of admissible evidence regarding commonality, typicality, and numerosity of the proposed class."  Id.

Judge Ambrose's ruling in Burkhart-Deal does not stand in isolation in this jurisdiction.  The United States Court of Appeals for the Third Circuit and the United States Supreme Court have held that the names and addresses of putative class members are discoverable.  *See* Sperling v. Hoffman-La Roche Inc., 862 F.2d 439, 446-48 (3d Cir. 1988) (ruling in a § 216(b) setting that the representative plaintiffs were permitted to obtain names and addresses of discharged employees from the defendant employer for the purpose of facilitating the representation); Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 174 (1989) (affirming).

In addition, other district courts within the Third Circuit have permitted the discovery of putative class member information prior to class certification.  See Plavin v. Grp. Health Inc., No. 3:17-CV-1462, 2022 WL 1911404, at *9 (M.D. Pa. June 3, 2022) (in a Rule 23 class action

granting in part defendant's motion to compel the identities of putative class members who had expressed an interest in joining the action over the plaintiff's objection on the grounds of privilege); <u>Knaupf v. Unite Here Loc. 100</u>, No. CV146915PGSDEA, 2015 WL 7451190, at *5 (D.N.J. Nov. 23, 2015) (denying defendant's motion to limit discovery to only plaintiff's individual claims in Rule 23 setting, thus granting the plaintiff's request to discover the names of other similarly situated employees within the scope of the proposed class); <u>Gates v. Rohm & Haas Co.</u>, No. CIV.A. 06-1743, 2006 WL 3420591, at *2 (E.D. Pa. Nov. 22, 2006) (granting defendant's motion to compel the names and addresses of the putative class members in a Rule 23 class action lawsuit).

Although it has been observed that courts in other jurisdictions have reached a different result, the courts in this jurisdiction consistently have held that pre-certification discovery of the names and contact information of other putative class members is appropriate.  In fact, it is quite germane for plaintiff to receive the names and addresses of the putative class members even though the class has not been certified, because it will reasonably lead to information bearing on the issues of numerosity, typicality and commonality.  Thus, this court will follow the consensus in this jurisdiction and grant plaintiff's motion to compel this basic information.

For the reasons set forth above, plaintiff's motion to compel discovery will be granted in and defendant will be directed to revise its discovery responses and comply with all additional discovery in a manner consistent with the rulings set forth in this Memorandum Opinion.   An appropriate order will follow.

 Date: January 29, 2024

<u>s/David Stewart Cercone</u>
David Stewart Cercone
Senior United States District Judge

cc:    Joshua P. Geist, Esquire
Michael A. Josephson, Esquire
Alyssa White, Esquire
Andrew W. Dunlap, Esquire
Michael McDonnell, III, Esquire
Diana Fields, Esquire
Gillian O'Hara, Esquire

(*Via CM/ECF Electronic Mail*)