# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRYAN JOYCE, Individually and for )
others similarly situated, )
                                        )
            Plaintiff, )
                                        )
         v. )        2:22cv1367
                                        )       **Electronic Filing**
COLTER ENERGY SERVICES USA, )
INC., )
                                        )
         Defendant. )

## OPINION

Bryan Joyce ("plaintiff") commenced this action on behalf of himself and all others similarly situated seeking redress against his employer, Colter Energy Services, Inc. ("defendant"), for the alleged failure to pay wages in full compliance with state and federal law. Plaintiff's Second Amended Complaint advances causes of action under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA"), the Pennsylvania Minimum Wage Act, 43 P.S. § 333.101 *et seq*. ("PMWA"), and the Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq*. ("WPCL"). Presently before the court is plaintiff's motion for conditional certification under the FLSA. After careful consideration of the motion, the memoranda of the parties, and the record, plaintiff's motion will be granted.

Defendant is an energy-related company that provides production testing services throughout the country and in the Commonwealth of Pennsylvania. Generally, defendant employs three classes of employees: field supervisors, night operators, and field assistants. Plaintiff was employed as a field supervisor.

Due to the nature of its work, defendant requires certain employees to utilize overnight or extended lodging during their work assignments. On a typical workday, non-exempt employees,

regardless of lodging status, would meet at a central location.  From there, defendant's employees would drive to the worksite in groups.

Plaintiff contends that because the worksites were often remote, drive time is a "necessary job duty."  (Plaintiff's Memorandum in Support at 5).  Although defendant arranged for the transportation of both field assistants and field supervisors, it only paid non-exempt field assistants for the drive time to and from the worksite each day.  Commencing on March 1, 2022, defendant paid all employees for this commute.  It did not issue retroactive payments for drive time incurred prior to that date.

Although defendant pays employees on an hourly rate, it also pays employees additional categories of compensation, such as: (1) truck pay at $50-to-$70 per workday, depending on truck size, (2) mileage allowance at $1.45 per mile, and (3) subsistence pay at $35-to-$40 per workday depending on position.  These additional payments are not included in an employee's regular hourly rate of pay for the purpose of calculating their overtime rate of pay.

Based on these allegations, plaintiff's motion seeks conditional certification of the following three (3) FLSA collectives:

**<u>Drive Time Collective</u>**
**All current and former hourly, non-exempt employees of Colter who incurred unpaid drive time at any time from August 30, 2019 to the present anywhere in the Commonwealth of Pennsylvania.**

**<u>Truck Pay/Mileage Collective</u>**
**All current and former hourly, non-exempt employees of Colter who either earned truck pay, mileage allowance, or both, at any time from August 30, 2019 to the present anywhere in the Commonwealth of Pennsylvania.**

**<u>Subsistence Pay Collective</u>**
**All current and former hourly, non-exempt employees of Colter who earned subsistence pay at any time from August 30, 2019 to the present anywhere in the Commonwealth of Pennsylvania.**

The instant motion for conditional class certification was filed after the parties engaged in an initial phase of discovery.  The matter is fully briefed and ripe for disposition.

The FLSA is a remedial form of humanitarian legislation that protects "the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others."  Brock v. Richardson, 812 F.2d 121, 124 (3d Cir. 1987) (citing Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No., 123, 321 U.S. 590, 64 (1944)).  It does so in part by setting forth substantive wage, hour, and overtime standards.  Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1, 11 (2011).  To further its ends, the FLSA permits a plaintiff to recover lost wages in an action in any court of competent jurisdiction.  29 U.S.C. § 216(b).

The action in this case, a collective action, "is a form of group litigation in which a named employee plaintiff or plaintiffs file a complaint 'in behalf of' a group of other, initially unnamed employees who purport to be 'similarly situated' to the named plaintiff."  Halle v. W. Penn Allegheny Health Sys. Inc., 842 F.3d 215, 223 (3d Cir. 2016).  Such actions allow plaintiffs to "minimize individual expense in pursuing wage rights through pooled resources and to benefit the judicial system through unitary resolution of common legal and factual issues arising from the same conduct."  Halle, 842 F.3d at 224 (citations omitted).  For the collective action to proceed, similarly situated employees must opt-in.  Halle, 842 F.3d at 224.  This requires the court to decide whether a potential class of opt-in plaintiffs is sufficiently alike to be considered "similarly situated."

Courts in our Circuit follow a two-step process for deciding whether an action may properly proceed as a collective action under the FLSA.  Camesi v. Univ. of Pittsburgh Med. Ctr., 729 F.3d 239, 243 (3d Cir. 2013) (citing Zavala v. Wal–Mart Stores Inc., 691 F.3d 527, 535 (3d Cir. 2012)).  Under the first step, FLSA collective actions must be " 'conditionally' certified

3

by the district court, which 'requires a named plaintiff to make a modest factual showing –

something beyond mere speculation – to demonstrate a factual nexus between the manner in

which the employer's alleged policy affected him or her and the manner in which it affected the

proposed collective action members.'" Reinig v. RBS Citizens, N.A., 912 F.3d 115, 123 n.1 (3d

Cir. 2018) (quoting Halle, 842 F.3d at 224).  In other words, this initial step of conditional

certification is a determination of whether similarly situated plaintiffs exist.  Zavala, 691 F.3d at

536 (quoting Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010)).

    In deciding whether employees in a putative collective are similarly situated for

conditional certification, "[r]elevant factors include (but are not limited to): whether the plaintiffs

are employed in the same corporate department, division, and location; whether they advance

similar claims; whether they seek substantially the same form of relief; and whether they have

similar salaries and circumstances of employment.  Plaintiffs may also be found dissimilar based

on the existence of individualized defenses." Zavala, 691 F.3d at 536-37.  Given the "modest

burden" at the first stage of the proceedings, "motions for conditional certification are generally

successful." Rood v. R&R Express, Inc., No. 2:17-CV-1223-NR, 2019 WL 5422945, at *2

(W.D. Pa. Oct. 23, 2019) (citing Bowser v. Empyrean Servs., LLC, 324 F.R.D. 346, 352 (W.D.

Pa. 2018); see also Bowser, 324 F.R.D. at 352 (stating, "[t]he Court may make this determination

with minimal evidence, Herring, 2007 WL 2121693, at *4, and this step's fairly lenient standard

typically results in a grant of conditional certification.") (citations omitted).

    The second step, referred to as "final certification," places upon the named plaintiff the

burden of demonstrating that he or she is similarly situated to the opt-in plaintiffs.  Halle, 842

F.3d at 226.  Being similarly situated means that one is subject to some common employer

practice that, if proven, would help demonstrate a violation of the FLSA.  Zavala, 691 F.3d at

538.  In making this determination, it is appropriate to look to a number of factors, specifically:

"(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant; and (3) fairness and procedural considerations." <u>Andrako v. U.S. Steel Corp.</u>, 788 F. Supp.2d 372, 378 (W.D. Pa. 2011) (citing <u>Moss v. Crawford & Co.</u>, 201 F.R.D. 398, 409 (W.D. Pa. 2000); <u>Lusardi v. Xerox Corp.</u>, 118 F.R.D. 351, 359 (D.N.J. 1987)).

Defendant provides a multitude of reasons why plaintiff's Motion for Conditional Certification should be denied. The parties agree that a two-tiered structure for analyzing conditional certification applies in deciding whether an action may proceed as a collective action. They dispute, however, whether the traditional standard of proof under the usual structure should apply at this stage of proceedings. Defendant contends that significant discovery has been completed, and as a result the court should apply a more intermediate and stricter standard of proof. Plaintiff maintains that the record reflects less than a cooperative and robust exchange of basic information, and therefore argues that the court should apply the established "fairly lenient" standard.

In support of its argument, defendant submitted a myriad of district court decisions where the court applied an intermediate standard. However, these decisions are by courts located outside this jurisdiction and the Third Circuit has not required anything more than a "modest factual showing" at this initial stage. <u>Halle</u>, 842 F.3d at 224; <u>see also</u> <u>Weinmann v. Cont. Land Staff, LLC</u>, No. 2:22-CV-01140-CCW, 2023 WL 3881394, at *4 (W.D. Pa. June 8, 2023) (denying defendant's intermediate standard argument on similar grounds). Further, the Third Circuit has reiterated that conditional certification is actually "'the district court's exercise of [its] discretionary power, upheld in <u>Hoffmann–La Roche</u>, to facilitate the sending of notice to potential class members." <u>Zavala</u>, 691 F.3d at 536 (quoting <u>Symczyk v. Genesis HealthCare Corp.</u>, 656 F.3d 189, 194 (3d Cir. 2011)). Given this discretionary context and the limited nature

of the actual discovery that has been completed to date, the court concludes that the fairly lenient standard should and does apply.

Defendant further argues that even if the lenient standard applies, plaintiff has still failed to establish that the putative collective is similarly situated. As noted above, at this stage plaintiff is required to "make a modest factual showing" demonstrating a factual nexus between how the defendant's alleged policy affected him and the manner in which it affected the other proposed members of the collective. Halle, 842 F.3d at 224. In making this determination, courts "typically rely on the pleadings and affidavits of the parties to determine the suitability of conditional certification." McConnell v. EN Eng'g, LLC, No. 2:20-CV-00153-MJH, 2020 WL 6747991, at *2 (W.D. Pa. Oct. 8, 2020) (citing Waltz v. Aveda Transp. & Energy Servs., Inc., No. 16-469, 2016 WL 7440267, at *2 (M.D. Pa. Dec. 27, 2016)).

In accordance with these standards, plaintiff has made the showing necessary for conditional certification. Specifically, he presented ten declarations of other employees. Within those documents, the following is evident: (1) all declarants worked for defendant during the relevant time period, (2) were hourly paid employees, (3) regularly worked more than forty (40) hours per week, (4) did not receive compensation for transporting field assistants to and from the worksite, (5) did not receive retroactive compensation from defendant, (6) received truck, milage and subsistence pay, and (7) were all subject to the same company-wide payroll policies or practices. Thus, based upon the evidence in the record, there is a sufficient basis to find a factual nexus between the effect of defendant's pay practices and policies on plaintiff and their effect on the other proposed members of the collective.

Notwithstanding this uniform practice, defendant argues that plaintiff has failed to establish that its policies violate the FLSA. It asserts that the company's truck, mileage, and

6

subsistence pay policies are lawful.  And the payment and reimbursement issues that surround these practices purportedly will result in highly individualized inquiries for each class member.

Although defendant devotes considerable effort in seeking to establish that the truck, milage, and subsistence pay policies are lawful, its brief is devoid of any argument that the policy of not paying employees for drive time to and from the worksite does not violate the FLSA.  This is not surprising given that courts in our district have consistently held that employer policies that do not compensate employees for driving to and from the worksite violate the FLSA and should result in conditional certification.  See Copley v. Evolution Well Servs. Operating, LLC, No. 2:20-CV-1442-CCW, 2022 WL 295848, at *5 (W.D. Pa. Jan. 31, 2022) (granting conditional certification against employer that failed to compensate travel to and from the job site each day); Dunkel v. Warrior Energy Servs., Inc., 304 F.R.D. 193, 201 (W.D. Pa. 2014) (holding that the plaintiffs met their conditional certification burden for employees who were not paid for driving to and from the worksite); Naicker v. Warrior Energy Servs., Inc., No. 2:14-CV-01140, 2015 WL 1642209, at *2 (W.D. Pa. Apr. 9, 2015) (relying on Dunkel in granting the plaintiff's motion for conditional certification for "lengthy transportation to far-flung job sites").  If follows that plaintiff has demonstrated at least a colorable basis for his claim that defendant's drive-time practices violated the FLSA.

Likewise, plaintiff has met its burden for initial certification regarding defendant's truck, mileage, and subsistence pay policies.  At this stage in the process, plaintiff must only show that he was "similarly situated" to other employees based upon the evidence submitted.  See Vasil v. Dunham's Athleisure Corp. d/b/a Dunham's Sports, No. 2:14CV690, 2015 WL 7871360, at *3 (W.D. Pa. Dec. 4, 2015) ("the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist.").  It is evident from the declarations of record that there was a factual nexus between the manner in which defendant's alleged policies affected

7

plaintiff and the manner in which it affected the proposed members of the collective. For instance, plaintiff submitted ten (10) declarations from other employees which state that the truck, mileage, and subsistence pay they received were not included in their regular hourly rate. These declarations sufficiently meet plaintiff's modest burden.

Even with this modest burden, defendant argues that certification must be denied because plaintiff fails to allege or demonstrate how these policies are unlawful. In this regard defendant contends that there is nothing unlawful about paying employees truck, mileage, and subsistence pay. Additionally, it is not unlawful to withhold these types of expense reimbursements from an employee's regular rate. In fact, statutory exemptions provide for such practices. As a result, defendant maintains that certification is inappropriate.

This appears to suggest that, when resolving a motion for conditional certification, a court must evaluate the merits of the plaintiff's theory of liability and then determine whether the challenged conduct was, as a matter of law, unlawful. But such a determination is not necessary or proper at this stage. See Stephens v. Farmers Rest. Grp., 291 F. Supp. 3d 95, 105 (D.D.C. 2018) ("[o]nce plaintiffs have met their burden, defendants may not thwart conditional certification merely by contradicting plaintiffs' claims, even if defendants provide 'voluminous documentation' purporting to show that no violations occurred."); see also White v. MPW Indus. Servs., Inc., 236 F.R.D. 363, 373 (E.D. Tenn. 2006) ("at this stage, a defendant's assertion of the potential applicability of an exemption should not be permitted to overcome an otherwise adequate threshold showing by the plaintiff.").

While defendant's contentions may ultimately prove to be correct, such arguments, as well as the individualized inquiry contentions, are merit-based arguments that need not be addressed at this initial stage. See Gallagher v. Charter Foods, Inc., No. 2:20-CV-00049, 2021 WL 2581153, at *4 (W.D. Pa. June 23, 2021) (explaining that individualized inquiries are more

appropriate for the second phase of FLSA cases);  see also Bowser v. Empyrean Servs., LLC, 324 F.R.D. 346, 352 (W.D. Pa. 2018) (Cercone, J.) ("[w]hether individualized determinations will predominate and render this case unsuitable for a collective action is "'more appropriately reviewed during step two of the certification process.'");  Viscomi v. Diner, No. CV 13-4720, 2016 WL 1255713, at *4 (E.D. Pa. Mar. 31, 2016) (a court does not evaluate the merits of a case when ruling on a motion for conditional certification).  In this regard if defendant's argument were to carry the day, then almost no collective action would be certified because the overwhelming majority of them require independent calculations at some juncture as part of the adjudicatory process.

Defendant also objects to plaintiff's motion on the grounds that the proposed classes temporally are overboard.  Based on the three-year statute of limitations, defendant asserts that plaintiff's notice should not reach back to August of 2019, but instead should only encompass the three years prior to the issuance of the notice.  Plaintiff replies that the potential opt-in period dating back to August 2019 is consistent with the potential Rule 23 class action period and the potential for equitable tolling.

Defendant's argument fails for a variety of reasons.  First, the FLSA has a "broad remedial purpose" and promotes interests of "judicial economy."  At this stage, the court is only granting notice for the purpose of obtaining a comprehensive class of potential opt-in plaintiffs. The potential for equitable tolling to reach back to dates preceding defendant's proposed alternative remains in the case and any determination of the actual limitations governing any opt-in member's claim would at the very least be premature at this juncture.

Moreover, determinations about whether the statute of limitations or equitable tolling apply to any opt-in member's claims are merits-based matters that are not appropriate at this preliminary stage of the certification process.  Fasanelli v. Heartland Brewery, Inc., 516 F. Supp.

9

2d 317, 323 (S.D.N.Y. 2007) ("[o]ut of an abundance of caution, and seeking to avoid any merit-based determinations at this time, the Court will certify class members employed by [defendant] over the past three years pursuant to possible decertification at a later time.").[1]

Finally, the case law supports plaintiff's position that a larger notice period is appropriate. See Curtis v. Time Warner Ent.-Advance/Newhouse P'ship, No. 3:12-CV-2370-JFA, 2013 WL 1874848, at *8 (D.S.C. May 3, 2013) (ruling on similar arguments in denying the defendant's contention that the requested notice defined a class that was too broad under the FLSA.). In essence, defendant's argument is premature. For these reasons, the court rejects defendant's contention that the statute of limitations precludes or restricts the dates for conditional certification.

Once conditional certification is granted, the court may approve notice and consent forms to be sent to putative class members which advise them of their opportunity to participate in the collective action. Halle, 842 F.3d at 225. It is well-established that district courts have broad discretion in directing notice to potential opt-in plaintiffs. Bellan v. Cap. BlueCross, 496 F. Supp. 3d 854, 860 (M.D. Pa. 2020) (citing Hoffmann-La Roche, 493 U.S. at 170 (1989)). Nevertheless, the United States Supreme Court has noted that in exercising this discretionary authority, the district courts must "be scrupulous to respect judicial neutrality" and "avoid even the appearance of judicial endorsement of the merits of the action." Hoffmann-La Roche, 493

---

[1] Of course, at the second stage the court may decertify the class based upon a failure of the members to be similarly situated or the timeliness of opt-in claims. See Aboah v. Fairfield Healthcare Servs., Inc., 662 F. Supp. 3d 192, 210 (D. Conn. 2023) ("despite that the Court has set an inclusive notice period, Defendants 'may still challenge the timeliness of the individual opt-in plaintiff's claims at the second stage of the certification process'"); Moss v. Crawford & Co., 201 F.R.D. 398, 410 (W.D. Pa. 2000) (analyzing defendant's statute of limitations defense pursuant to a motion for decertification). In this regard defendant's argument seeks to give short shrift to the core principles of the FLSA and is better suited at the second stage of certification or summary judgment.

U.S. at 174.  Additionally, the overarching policies of the FLSA require that the notice provide "accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate."  Id. at 170.

The remainder of defendant's objections are grounded in the notion that the contents and methods of communication in the proposed notice are improper.  First, defendant contends that the 60-day opt-in period is excessive.  In support it cites numerous non-binding decisions which ruled on matters that are not analogous to the issues presented here.  Further, defendant posits that "special circumstances are lacking" and this is not "a nationwide class."  (Defendant's Brief in Opposition at 20).

Interjecting defendant's referenced criteria into the conditional certification process would fail to adhere to the established standards for determining whether the notice is appropriate and effective.  In the instant context the court is concerned with whether the notice "sets reasonable cutoff dates to expedite the action's disposition."  Hoffmann-La Roche Inc, 493 U.S. at 172.  And in both Copley and Naicker, both of which dealt with collective actions for unpaid driving time, the court approved a notice period of sixty (60) days.  Additionally, in two of the leading conditional certification cases in this district both judges found a sixty-day opt in period to be reasonable.  See Kuznyetsov v. W. Penn Allegheny Health Sys., Inc., No. CIV. A. 09-CV-379, 2009 WL 1515175, at *6 (W.D. Pa. June 1, 2009) ("a sixty (60) day opt-in period is reasonable."); Camesi v. Univ. of Pittsburgh Med. Ctr., No. CIV.A 09-85J, 2009 WL 1929873, at *2 n.1 (W.D. Pa. July 1, 2009) ("The undersigned joins Chief Judge Ambrose in concluding that a sixty-day opt in period is reasonable.").  We too are persuaded that a 60 day notice period is appropriate in this action.

Defendant also contends that emails are unnecessary and cell phone numbers and text messages are improper.  However, as this court recently recognized: "numerous judges in this

district consistently have held that 'it is appropriate in the modern digital age to distribute notice by mail, email, and text, because although people frequently move and change addresses, they typically retain the same email addresses and phone numbers.' " Surles v. Wexford Health Sources, Inc., No. 2:22CV1376, 2024 WL 885075, at *6 (W.D. Pa. Mar. 1, 2024) (Cercone, J.) (collecting cases).  Given this extensive line of authority, there is no reason to reach a different conclusion here.

Defendant further asserts that the proposed opt-in notice should mention that the plaintiffs may be required to pay court costs if they lose.  It relies on Behnken v.  Luminant Min. Co., LLC, 997 F. Supp. 2d 511, 524 (N.D. Tex. 2014), to support its contention.  Plaintiff counters by arguing that such language would be incorrect and misleading because plaintiff's counsel has agreed to front all costs of the litigation.

Although this issue is not well litigated in our district, Dunkel discusses the current issue in detail while also undertaking a thorough analysis of Behnken.  In Dunkel, the plaintiffs argued that the disclosure of potential costs was unnecessary because the plaintiff's counsel had agreed to assume all costs for those members who elected to use the attorneys identified in the notice form.  Chief Judge Hornak found the argument to be unpersuasive.  His primarily concern was with the members who might opt in but elect to hire separate counsel.  In support of his ruling Chief Judge Hornak emphasized that "because of the real possibility that at least some opt-in Plaintiffs could be responsible for certain court costs, some language on that topic should be included in the Notice in order to provide potential opt-in Plaintiffs with appropriate disclosure of the possible risks of joining the lawsuit."  Dunkel, 304 F.R.D. at 207.  He drafted language to highlight the actual costs that opt-in members might face.

12

The language supplied in <u>Dunkel</u> is sufficient to ensure that opt-in members are aware of any potential financial risk without the potential to chill participation.  The language to be included in the notice is as follows:

> If at the end of the case the Court concludes that the Defendant was the prevailing party, the Defendant may request that the Court award court costs to them and against the Plaintiffs in this case.  Plaintiffs could oppose any such request.  Those court costs could include fees for transcripts and printing, witness fees, certain copying costs, docket fees and the fees of any Court-appointed experts.  They would not include the Defendant's attorneys fees or expert fees.  Whether any such court costs would be awarded would be determined by the Court at the appropriate time.  If you retain Joshua P. Geist, Michael A. Josephson, Alyssa White, Andrew W. Dunlap, and William M. Hogg as your lawyers in this case, they have agreed that should such court costs be awarded, they and not the Plaintiffs would be responsible for paying them.

The Court finds this to be sufficient and warranted here.

Defendant's next content-based objection is that the notice should advise opt-in members that they may be required to give a deposition, respond to written discovery, or testify in court.  Similarly, the notice should state that joining members may retain their own counsel.  These straightforward additions are sufficient to inform the opt-in plaintiffs of their potential obligations in this litigation.  <u>Compare</u> <u>STEVEN PENDLETON, on behalf of himself & all others similarly situated, Plaintiff, v. FIRST TRANSIT, INC., Defendant.</u>, No. CV 20-1985, 2021 WL 3671998, at *1 (E.D. Pa. Jan. 22, 2021) (holding that such language would be appropriate).  Appropriate notice language will be supplied in the Court's order.

Finally, defendant requests that the Notice provide an opportunity for defendant to state its position regarding the merits of the lawsuit.  Specifically, defendant requests a sentence that is similar, but not identical to, a sentence provided by plaintiff.  Given that this requested sentence

is defendant's position in the case, defendant's request will be granted.  The suggested language will be outlined in Court's order.[2]

  With the additions highlighted above, the proposed notice is sufficient to permit potential plaintiffs to make an informed decision on the matter.  An appropriate order will follow.

<u>Date: May 31, 2024</u>

<u>s/David Stewart Cercone</u>
David Stewart Cercone
Senior United States District Judge

cc: Joshua P. Geist, Esquire
  Michael A. Josephson, Esquire
  Alyssa White, Esquire
  Andrew W. Dunlap, Esquire
  William M. Hogg, Esquire
  Michael McDonnell, III, Esquire
  Diana Fields, Esquire
  Gillian O'Hara, Esquire
  Jason Stitt, Esquire

  (*Via CM/ECF Electronic Mail*)

---

[2]  Defendant's remaining objections are not based on controlling authority and are unpersuasive in any event.